NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LOCAL UNION 825, affiliated with the INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO, And THE BOARDS OF TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 825 PENSION FUND, THE IUOE LOCAL 825 WELFARE FUND, THE IUOE LOCAL 825 APPRENTICESHIP TRAINING AND RETRAINING FUND, THE IUOE LOCAL 825 SUPPLEMENTAL EMPLOYMENT BENEFIT FUND, THE IUOE LOCAL 825 SAVINGS FUND, THE IUOE LOCAL 825 ANNUITY FUND,<br><br>    Plaintiffs,<br><br> v.<br><br>MCRAND CONTRACTING CO. INC., BIL-JIM CONSTRUCTION, INC., BIL-JIM CONSTRUCTION, INC., II and LAURA J. JOHNSON,<br><br>    Defendants. | : : : : : : : : : : : : : : : : : : : : : : : : : | Civil Action No. 07-4490 (JAP)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**OPINION** |

PISANO, District Judge.

  Before the Court is a motion for partial summary judgment filed by Plaintiffs the Boards of Trustees of the International Union of Operating Engineers Local 825 Pension Fund, Welfare Fund, Apprenticeship Fund, Supplemental Employment Benefit Fund, Savings Fund and Annuity Fund ("Funds") (together, "Plaintiffs") against Defendants McRand Contracting Co.,

Inc. ("McRand") and Bil-Jim Construction ("Bil-Jim").[1] McRand and Bil-Jim oppose the motion. Also before the Court is a cross-motion for partial summary judgment filed by Defendant Laura J. Johnson against Plaintiffs. Plaintiffs oppose that motion. For the following reasons, the Court will grant Plaintiffs' motion in part and deny it in part. The Court will grant Ms. Johnson's cross motion.

I.     BACKGROUND

Since Bil-Jim was established as a construction company in 1965, it has never entered into a collective bargaining agreement with any union, including Local Union 825 ("Local 825"), affiliated with International Union of Operating Engineers. Presently, Bil-Jim remains a non-union company. To compete for and perform union work in the public sector, one of the owners of Bil-Jim established McRand as a union sister company in 1975. McRand subsequently entered into a collective bargaining agreement with Local 825 (the "CBA"). The CBA provides that McRand must pay contributions to the Funds, which are multi-employer employee benefit plans as described in Sections 3(3) and 3(37) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(3) and 1002(37), based on the weeks and hours its employees work each month. For over thirty years, Bil-Jim and McRand performed construction work as a "double-breasted" operation, wherein the companies often used mixed crews of union and non-union employees on their projects. The nature of this collaboration was open and notorious.

On September 19, 2007, Plaintiffs filed their Complaint against McRand and Bil-Jim, alleging that the "double breasted" nature of their operation violated the terms of the CBA. Specifically, Plaintiffs claim that a recent audit of McRand revealed that the companies were operating as a single entity, and that they were using non-union employees to perform work

---

[1]     Defendant Bil-Jim II, named in the caption, is no longer in existence and has not been in operation for many years. Def. Opp'n 7.

2

covered by the CBA. Accordingly, Plaintiffs claim that Bil-Jim should have been paying contributions to the Funds for that work. Defendants respond that Local 825 and the Funds were aware of the "double-breasted" operation for over thirty years, and thus their argument that such an arrangement violated the terms of the CBA is disingenuous.

Plaintiffs submitted the instant motion for partial summary judgment on July 9, 2010, stating that there are no disputed facts and claiming that the companies owe the Funds for not contributing based on covered work performed by Bil-Jim employees. Defendants responded to the motion and filed a cross-motion for partial summary judgment on September 7, 2010, claiming that past practice shows Plaintiffs' argument is disingenuous and seeking dismissal of Laura J. Johnson because Plaintiffs failed to provide evidence of her personal liability. On October 20, 2010, the Court heard oral argument on the motion. The Court has also held numerous settlement conferences on the matter, but the parties have failed to reach an agreement.

## II.     STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court must determine whether disputed issues of material fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Stephens v. Kerrigan,* 122 F.3d 171, 176-77 (3d Cir. 1997). The

3

moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* at 324. Thus, the non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id.* "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has demonstrated to the court the absence of a material fact at issue, the Supreme Court has stated that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Matsushita,* 475 U.S. at 586-87 (citations omitted). In other words, "[i]f the evidence [submitted by the non-moving party] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted).

The Supreme Court has specifically recognized that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses, and [ ] that [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex,* 477 U.S. at 323-24. Thus, "[w]hen the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 341 (3d Cir. 1990).

**III.     DISCUSSION**

     A.     **Section 515 Enforcement**

The Funds bring this action pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, which allows employee benefit and multiemployer plans, as beneficiaries, to file suit to recover contributions due under the terms of the plan. Section 515 of ERISA further provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In the present action, the Funds seek to obtain payment of contributions from Bil-Jim that, they allege, should have been made in accordance with the terms of the CBA. Article XXII of the CBA states:

> [T]he Employer will agree to execute a Collective Bargaining Agreement with the Union covering any subsidiary corporation or any separate corporation engaged in construction work which the Employer or its officers have formed, may form or have a direct or indirect interest therein.
>
> It being the intent and purpose of this understanding that all construction operations which involve the use of Operating Engineers will be done by companies having an Agreement with Local Union 825 and the Employer shall not utilize subsidiary corporations or other corporations in which the Employer or its officers have a direct or indirect interest to engage in non-Union construction activities with the effect of depriving Employees of the Employer, party to this Collective Bargaining Agreement, of work opportunities on the terms and conditions herein set forth.

CBA, Art. XXII. Plaintiffs claim that McRand used non-union Bil-Jim employees for covered work in violation of Article XXII, and seek the relevant contribution.

Clearly, Bil-Jim satisfies the meaning of a "subsidiary corporation or . . . separate corporation engaged in construction work which the Employer or its officers have formed, may form or have a direct or indirect interest therein." As Defendants admit, "one of the owners of Bil-Jim . . . established [the] sister union company, Defendant McRand Contracting Company,

5

Inc." Opp'n 2 (Docket Entry no. 42). Furthermore, it is evident that Bil-Jim and McRand were the type of related companies contemplated by the meaning of Article XXII, as Defendants' own expert testified that Bil-Jim falls within the meaning of the language in Article XXII. *See* Declaration of Matthew P. Rocco ¶47 (Docket Entry no. 36). Finally, Defendants' expert and Plaintiffs' auditor explained that McRand used Bil-Jim to perform construction activities that were covered in the CBA between McRand and Local 825. *See id.*; Declaration of Kirsten Canuso ¶¶45-46 (Docket Entry no. 35). Therefore, by its terms, McRand violated the CBA by having Bil-Jim perform covered, non-union work.

Furthermore, while Bil-Jim never signed the CBA or agreed to contribute to the Funds, Bil-Jim is liable for the contributions under the single employer doctrine. "A 'single employer' relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'" *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982). If the two entities are found to be a single employer, then they are considered as such for liability purposes. *Id.* The factors that courts have relied upon to determine the existence of a single employer are (1) interrelation of operations between the two companies, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255, 257, 85 S. Ct. 876, 877 (1965). Plaintiffs have demonstrated that Bil-Jim and McRand meet all criteria: (1) the companies shared offices and had an interdependent focus; (2) they have the same managing officers; (3) they shared employees and supervisors; and (4) they are owned by the same individuals. *See* Pl. Br. 25-29. Defendants make little effort to refute this characterization.

Instead, Defendants respond that because Local 825 was aware of and, according to Defendants, acquiesced to the use of Bil-Jim employees to perform covered work, Plaintiffs waived any right to seek contribution from Bil-Jim. Local 825's acquiescence, however, whether expressed orally or through practice, constitutes nothing more than a non-written agreement among the union and the employer that contradicts the plain meaning of the CBA. Such an agreement is irrelevant to the Funds' ability to recover based on the terms of the CBA. In a seminal case directly on point, the Seventh Circuit in *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, concisely interpreted Section 515 of ERISA, consistent with the unanimous view of the other courts of appeals, as entitling multiemployer plans "to enforce the [CBA] without regard to understandings or defenses applicable to the original parties." 870 F.2d 1148, 1149 (7th Cir. 1989) (*en banc*).

The facts of *Gerber* are instructive for the instant case: James H. Gerber, owner of a non-union truck company, acquired another truck service and hired its three drivers, who had been members of a union and enjoyed the attendant benefit plan. 870 F.2d at 1149-50. Two of the drivers were near retirement age, so Gerber signed their union's collective bargaining agreement after the union promised not to expect contributions based on any other of his truck drivers besides the three that were just hired. *Id.* at 1150. The union honored its promise to Gerber during the course of the employment of the three drivers. *Id.* The collective bargaining agreement, however, made clear that Gerber was obligated to make benefit contributions on behalf of all truck drivers in the company. *Id.* After the third driver finished his employment, the benefit plan conducted an audit and discovered that, according to the collective bargaining agreement, Gerber should have been making contributions on behalf of 18 other employees. *Id.* at 1150-51. It sought the relevant contributions and Gerber refused. *Id.* at 1151.

The Seventh Circuit held Gerber responsible for the contributions for a few important reasons. First, as third-party beneficiaries, multiemployer plans usually take contracts as they find them. *Id.* Furthermore, unlike typical third-party beneficiaries to an agreement, multiemployer plans may not modify the level of benefits it must deliver according to the terms of a collective bargaining agreement. *Id.* As such, Congress added Section 515 to ERISA specifically to enable plans to enforce collective bargaining agreements according to their terms, irrespective of side agreements or modifications made orally or by practice, "to the extent not inconsistent with law." *Id.* at 1152-53. Second, under Section 302(c)(5)(B) of the National Labor Relations Act, 29 U.S.C. § 186(c)(5)(B), no employer may agree with a union to contribute to a benefit plan without a "written agreement." *Id.* at 1154. This requirement reinforces the idea that courts may not give force to modifications, orally or by practice, of collective bargaining agreements. *Id.* Third, there are economic reasons to enforce contributions by the terms of collective bargaining agreements: multiemployer plans have defined contributions coming in and defined contributions going out. *See id.* at 1154-56. Like insurance plans, multiemployer benefit plans cannot subsist only on the contributions of those most likely to receive benefits. While every employee would, if given the option, choose to have some of his or her earnings contributed toward their pension only in later years when they near retirement, for example, a pension plan would be unable to make payments if no contributions were made on behalf of younger employees. Adhering to the terms of the collective bargaining agreement prevents employers from disingenuously modifying, orally or by practice, the agreement to cover different employees.

The Third Circuit has cited *Gerber* with approval, *see Connors v. Fawn Mining Corp.*, 30 F.3d 483, 491 (3d Cir. 1994), and the Court adopts *Gerber*'s reasoning in this case. In this case,

Defendants contend that over thirty years of practice modifies the CBA between McRand and Local 825 to negate the effect of Article XXII. Such a modification, however, does not comport with the intention of Section 515 of ERISA, nor with the purpose and economics behind multiemployer plans. The operations of Bil-Jim and McRand were so intertwined that they constitute a single employer, and any ability to modify the CBA by thirty years of practice opens the door to litigation over who is covered by the CBA and who is not, exactly the type of costly litigation Section 515 seeks to avoid. Furthermore, in *Connors*, the Third Circuit cited *Gerber* as limiting the defenses available to an employer in an action to recover delinquent contributions, *see id.*, none of which Defendants utilize in this action.

Defendants counter that this case differs from *Gerber* and its line of reasoning because the Funds were aware of Local 825's agreement in practice to disregard Article XXII of the CBA, unlike the plans in *Gerber* and its progeny. For proof they point to the admission by one of the trustees of the Funds that he was aware of the "double breasted" operation of Bil-Jim and McRand. As such, they claim, the Funds' present claims are disingenuous and inequitable. The trustee's knowledge of the "double breasted" nature of the operation, however, may not be imputed to the Funds by the terms of the CBA. Article XVIII explicitly states:

> No officers, agents, representatives or Employees of any Union or of any Employer shall be deemed an agent or representative of the Board( s) of Trustees or be deemed as authorized to make any oral or written representations [on its behalf]. It is further agreed and understood that no single Trustee or Employee(s) of any Fund has authority to give any such representations or comitments [sic] since such representations or commitments can only be made by the Board of Trustees acting as Boards of Trustees.

CBA, Art. XVIII. Defendants only claim that a single trustee represented that the Funds had agreed to the "double breasted" operation despite Article XXII of the CBA. As Article XVIII explicitly states, however, no single trustee can make such a representation. Accordingly, the

Funds cannot be deemed to have agreed or had knowledge of the practice of allowing the "double breasted" operation to continue without Bil-Jim's making its contributions. Therefore, Plaintiffs have established that they are entitled to summary judgment to recover contributions due under the terms of the CBA.

## B. Attendant Awards

Section 502(g) of ERISA requires that, in any judgment in favor of a benefit plan in a Section 515 enforcement action, the court shall award the plan unpaid contributions, interest on the unpaid contributions, liquidated damages, and reasonable attorney's fees and costs. 29 U.S.C. § 1132(g). For the years in question under the audit, Plaintiffs have provided the Court with declarations certifying that unpaid contributions totaled $4,214,293, interest $1,114,415, liquidated damages $799,295 and audit fees $399,760. Plaintiffs have reserved the submission of attorney's fees until this motion is decided.

Defendants challenge these calculations on several grounds. First, Defendants claim that the auditors were unable to provide support or backup documentation for auditing fees. Indeed, there does not appear to be any support for the auditing fees beyond an assertion in the audit report that fees are based on hourly rates. *See* Canuso Declaration, Exh. A at 5. Defendants further claim that the original auditor's report is inaccurate in that the total amount Plaintiffs presently seek differs from the original report. *Compare* Canuso Declaration ¶45 *with* Canuso Declaration, Exh. A at 14. Moreover, Defendants have submitted an expert report supporting their claims that the audit amounts were seriously flawed, to which Plaintiffs have not responded in their motion papers. Such a dispute over material facts, such as how much work performed by Bil-Jim employees was covered, precludes a finding of summary judgment. Accordingly, doubt exists as to the amounts owed to the Funds, and because all inferences of doubt must be resolved

10

in favor of the nonmoving party, the Court will deny Plaintiff's motion for summary judgment as to the amounts owed.

### C.     Dismissal of Laura J. Johnson

Finally, Defendants contend in a cross-motion for partial summary judgment that Defendant Laura J. Johnson should be dismissed from the case because Plaintiffs have not provided any evidence or argument in support of her personal liability.  Plaintiffs respond that Ms. Johnson must remain a party to the case as jointly and severally liable because she is the sole owner of McRand.  New Jersey "abide[s] by the fundamental propositions that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise."  *Richard A. Pulaski Const. Co., Inc. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 472, 950 A.2d 868, 877 (2008) (citations omitted).  Courts will not pierce the corporate veil except "to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law."  *Id.*

Plaintiffs claim that the formation of McRand was an event designed explicitly to circumvent the National Labor Relations Act and ERISA.  The open and notorious fashion in which McRand and Bil-Jim operated their "double breasted" operation, however, strongly suggests that McRand's formation was not intended to circumvent the law, but rather designed to adhere to an understanding between the companies and Local 825 which was outside the terms of the CBA.  Although this adherence violated the terms of the CBA and resulted in unpaid contributions under ERISA, Plaintiffs have not produced the requisite proof of intent that McRand was specifically set up as an attempt to perpetrate fraud or otherwise evade the law.

11

Accordingly, Defendants' cross motion to dismiss Laura J. Johnson will be granted. Ms. Johnson will be dismissed from the case.

### IV.     CONCLUSION

The Court concludes that Plaintiffs are entitled to summary judgment to recover contributions due under the terms of the CBA.  There exists a dispute on material facts, however, with regard to the amount owed to the Funds.  Accordingly summary judgment with respect to the amounts owed will be denied and the Court will refer the matter to the Magistrate Judge for further proceedings and a Report and Recommendation.  Defendant Laura J. Johnson's cross motion for summary judgment will be granted because the evidence does not support piercing the corporate veil and Ms. Johnson will be dismissed.  An appropriate Order will issue.

/s/ JOEL A. PISANO
United States District Judge

Dated: June 30, 2011